01
02
03
04
05
06
07
08
09
10
11
12
13
14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MATTHEW FRANZINO BOLAR,                    )
                                            )   Case No. C05-2029-TSZ-JPD
            Petitioner,                      )
                                            )
      v.                                     )
                                            )   REPORT AND RECOMMENDATION
F. LUNA, et al.,                            )
                                            )
            Respondents.                     )
_____ )

## I.  INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Matthew Franzino Bolar has filed a 28 U.S.C. § 2254 petition for writ of habeas corpus challenging his May 19, 2000 conviction in King County Superior Court.  Dkt. No. 8.  Respondents have filed a response opposing the petition, (Dkt. No. 22), to which petitioner has replied by traverse.  Dkt. No. 51.  After careful consideration of the pleadings, supporting materials, governing law and the balance of the record, the Court recommends that the petition be DENIED and this case DISMISSED with prejudice.

## II.  FACTS AND PROCEDURAL HISTORY

Petitioner was charged in King County Superior Court with first degree murder and first degree felony murder in the course of first degree burglary.  Dkt. No. 24, Ex. 3 at 7, Ex. 1.  A jury found petitioner guilty of first degree felony murder, but was unable to reach a unanimous verdict on the first degree murder charge.  *Id.* Ex. 3 at 8.  Petitioner received a

REPORT AND RECOMMENDATION
PAGE - 1

01 firearm enhancement and was sentenced to 500 months incarceration.  *Id.* Ex. 1, Ex. 3 at 8.

02  A. <u>Direct Review</u>

03  Proceeding through counsel, petitioner appealed his conviction to Division One of the

04 Washington Court of Appeals ("Court of Appeals").  *Id.* Ex. 4-8.  On August 1, 2003, in a

05 partially published opinion, the Court of Appeals affirmed petitioner's conviction.  Ex. 3,

06 *available at State v. Bolar*, 118 Wn.App. 490, 493, 78 P.3d 1012 (2003).

07  On October 31, 2003, again proceeding through counsel, petitioner filed a petition for

08 direct review with the Washington Supreme Court ("Supreme Court").  Dkt. No. 24, Ex. 31.

09 Petitioner argued that (1) he had been denied his right to represent himself; (2) the trial court

10 provided an erroneous accomplice liability jury instruction; (3) the State had failed to

11 disprove his self-defense claim; (4) the trial court erroneously admitted damaging evidence of

12 his prior acts; (5) the trial court refused to admit exculpatory evidence; (6) he received

13 ineffective assistance of counsel; and (7) the prosecutor committed prosecutorial misconduct

14 during closings arguments.  *Id.*  On June 2, 2004, the Supreme Court denied the petition for

15 review without substantive comment.  *Id.* Ex. 32.  On June 23, 2004, the Court of Appeals

16 issued its mandate.  *Id.* Ex. 33.

17  B. <u>Collateral Review</u>

18  Before the conclusion of direct review, petitioner filed two personal restraint petitions

19 ("PRPs").  The first, filed with the Court of Appeals, recited a laundry list of alleged errors,

20 including prosecutorial misconduct, judicial misconduct, ineffective assistance of counsel,

21 due process violations, cumulative error and denials of petitioner's right to present a defense,

22 cross examine witnesses, and receive a speedy trial.  *Id.* Ex. No 34.[1]  The second PRP was

23

24

25  [1]  On July 17, 2000, petitioner filed a form PRP that contained virtually no substantive argument, but referred to an "attached 25 grounds" and "attached grounds and facts."  Dkt. No. 24, Ex. 34.  No such attachment was filed with the PRP, but a fifty-five page brief, submitted on

26 November 29, 2005, contains the same file number.  *See id.* Ex. 35.  The Court treats this document as the attachment to which petitioner referred in his first PRP.

REPORT AND RECOMMENDATION
PAGE - 2

01  filed directly with the Supreme Court on October 18, 2002, *id.* Ex. 37, but was ultimately

02  transferred to the Court of Appeals.  It raised several claims of prosecutorial misconduct and

03  argued that cumulative error undermined the fairness of petitioner's trial.  *Id.*  The Court of

04  Appeals stayed both PRPs pending the outcome of petitioner's direct appeal.  *Id.* Ex. 43.

05  Following the conclusion of direct review, the stay was lifted and both PRPs were dismissed

06  by as barred by R.C.W. § 10.73.140, the State's prohibition on successive and/or frivolous

07  petitions.  Dkt. No. 24, Exs. 36, 40, 43.

08      Petitioner then sought Supreme Court discretionary review of both decisions.  *Id.* Ex.

09  Nos. 41, 42.  With respect to the first PRP, petitioner raised over twenty issues, many of

10  which were vague, conclusory, and overlapping.  *Id.* Ex. 42.  He also argued that the judge,

11  prosecutor and defense counsel conspired to convict him and that he received ineffective

12  assistance of counsel.  *Id.* Ex. 42.  Petitioner's motion for discretionary review of the second

13  PRP also raised over twenty challenges.  *Id.* Ex. 41.

14      The Supreme Court consolidated the two motions and on December 28, 2004, issued a

15  ruling denying review.  *Id.* Ex. 43.  With respect to the first PRP, the Court found that

16  petitioner failed to "show [that] the trial judge erred in his rulings" or "present any admissible

17  materials supporting any of his claims for relief."  *Id.*  It agreed with the Court of Appeals

18  that the claims that had not been adjudicated on direct review were "too conclusory and

19  unsupported to merit consideration."  *Id.*   It also ruled the "interests of justice" did not

20  require re-examination of petitioner's claims.  *Id.*

21      On January 11, 2005, petitioner filed a motion to modify the Supreme Court's ruling.

22  *Id.* Ex. 44.  The motion itself contained no substantive arguments, but instead incorporated by

23  reference the claims in the original motions.  *Id.*  On March 1, 2005, the Supreme Court

24  denied the motion to modify without comment.  *Id.* Exs. 45, 46.  The Court of Appeals issued

25

26

REPORT AND RECOMMENDATION
PAGE - 3

01  certificates of finality for the first and second PRPs in April 2005.  *Id.* Exs. 47, 48.[2]

02  On January 21, 2005, petitioner filed a third and fourth PRP with the Supreme Court.

03  *Id.* Exs. 49, 50.[3]   In the third PRP, petitioner raised three arguments.  *Id.* Ex. 49.  He argued

04  (1) that the trial court violated his due process rights by erroneously denying a *pro se* motion

05  *in limine* to exclude evidence or prior acts, (2) that his trial counsel provided ineffective

06  assistance by failing to object to certain testimony, and (3) that arguments one and two,

07  together with all of his other prior arguments (incorporated only by reference), rendered his

08  conviction fundamentally unfair and violative of due process.  *Id.*  The fourth PRP alleged

09  two grounds for relief:  (1) that petitioner's trial counsel was ineffective because he failed to

10  obtain and use readily available exculpatory evidence and (2) that this, and all other prior

11  arguments resulted in a fundamentally flawed trial that violated due process.  *Id.* Ex. 50.  The

12  State opposed the petitions as successive and meritless.  *Id.* Exs. 51, 52.  Petitioner replied

13  that his claims had never been adequately adjudicated and that he was raising new factual

14  grounds.  *Id.* Ex. 53, 54.

15  The Supreme Court transferred the PRPs to the Court of Appeals, which consolidated

16  and dismissed them on June 21, 2005.  *Id.* Ex. 55.  It found that petitioner's evidentiary

17  arguments had been adequately addressed on direct review and that the ineffective assistance

18  of counsel claim lacked merit.  *Id.*  It also found petitioner's cumulate error claims

19  unconvincing.  *Id.*  It dismissed the claims as successive, but denied as extraordinary the

20  State's motion to bar further filings.  *Id.*

21  On July 7, 2005, petitioner filed a motion for discretionary review of the dismissal of

22  the third and fourth PRPs with the Supreme Court.  *Id.* Ex. 56.  The motion raised a laundry

23

24  [2]  The certificate of finality for the second PRP was issued on April 12, 2005, and the certificate for the first on April 14, 2005.  Exs. 47, 48.

25

26  [3]  These PRPs were filed as separate documents on the same day and received separate case numbers. Dkt. No. 24, Exs. 49, 50.  Although the parties briefed these PRPs separately, the Supreme Court consolidated them and dismissed them in a single order.  *Id.* Exs. 51-55.

list of issues, including an attack on the constitutionality of R.C.W. § 10.73.140, numerous ineffective assistance of counsel arguments, the trial court's erroneous admission of prejudicial evidence and refusal to grant a limiting instruction, several due process violations, and cumulative error. *Id.* On August 30, 2005, the Supreme Court denied the motion because petitioner had shown "no obvious or probable error meriting . . . review" and because he had failed to show that he had been prejudiced by any constitutional error. *Id.* Ex. 57.

Petitioner moved to modify the decision, incorporating the arguments in his original motions by reference. *Id.* Ex. 58. He also argued that the Court of Appeals had selectively applied its procedural rules to bar his claims without engaging in meaningful analysis on the merits. *Id.* On November 11, 2005, the Supreme Court denied the motion to modify without comment. *Id.* Ex. 59. The Court of Appeals issued a consolidated certificate of finality for the third and fourth PRPs on December 30, 2005, . *Id.* Ex. 60.

On November 28, 2005, petitioner filed a fifth PRP directly with the Supreme Court. *Id.* Ex. 61. In it, he argued that an erroneous accomplice liability instruction had violated his due process rights. *Id.* The State opposed the fifth PRP and petitioner replied. *Id.* Exs. 62, 63. The PRP was transferred to the Court of Appeals and later denied on March 2, 2006. *Id.* Ex. 64. Specifically, the Court of Appeals found that the instructional error argument had been addressed on direct appeal and that the instruction had caused no "actual and substantial prejudice" and eventually dismissed the entire PRP pursuant to R.C.W. § 10.73.140, the State's rule barring successive petitions. *Id.*[4]

On March 23, 2006, petitioner filed a motion for discretionary review in the Supreme Court. *Id.* Ex. 65. The motion raised ten arguments related to petitioner's claim that the Court of Appeals erroneously rejected his argument regarding the accomplice liability instruction. *Id.* The Supreme Court denied the motion on May 26, 2006, finding the trial

---

[4] This decision also noted that the PRP was untimely, but did not dismiss it on this ground.

REPORT AND RECOMMENDATION
PAGE - 5

01   court's "referring to knowing participation in 'a' crime rather than 'the' crime" in its

02   instruction to be harmless error that, beyond a reasonable doubt, did not contribute to the

03   verdict against petitioner.  *In re Bolar*, Case No. 78476-1 at 1 (Wash. May 26, 2006)

04   (unpublished opinion).  Specifically, the court held that the error was harmless "in light of the

05   overwhelming evidence that Mr. Bolar not only directly participated in the predicate felony of

06   first degree burglary[,] but was the killer." *Id.* (citing *State v. Bolar*, 118 Wn.App. 490, 506,

07   78 P.3d 1012 (2003); *State v. Carter*, 154 Wn.2d 71, 78-79, 109 P.3d 823 (2005)).  The

08   Supreme Court also concluded that petitioner had failed to demonstrate that the interests of

09   justice required re-examination of the error.  *In re Bolar*, Case No. 78476-1 at 2.

10         On December 7, 2005, petitioner filed the present 28 U.S.C. § 2254 petition for writ

11   of habeas corpus.  He partially amended the petition on December 23, 2006.  Dkt. No. 6.[5]

12   After several extensions of time were granted to allow the respondents to obtain and review

13   the lengthy state-court record, respondents filed an answer.  Dkt. Nos. 17-22.  Petitioner's §

14   2254 petition, the parties' numerous pleadings, and the complete record in this case are now

15   before the Court.

16                              III.  ISSUES PRESENTED

17         Petitioner's voluminous petition lists thirty separate grounds for relief.  Dkt. Nos. 1-4,

18   9-11, 13.  Many of the grounds involve similar, if not identical, legal theories and

19   overlapping factual allegations.  In order to avoid a cumbersome and duplicative analysis, the

20   Court has grouped petitioner's claims into general categories by claim, each of which are

21   addressed in the analysis section below.  Petitioner's claims can be grouped into eleven major

22   categories: (1) ineffective assistance of counsel; (2) right to self-representation; (3) right to

23   present a defense; (4) right to exclude prejudicial evidence; (5) prosecutorial misconduct; (6)

24   speedy trial violations; (7) jury bias; (8) deficient jury instructions; (9) insufficient evidence;

25

26         [5]  The amended petition consisted of an amended cover page that added the disposition
          dates of his third and fourth PRPs.  Dkt. No. 26.

REPORT AND RECOMMENDATION
PAGE - 6

(10) unconstitutionality of state collateral review rule; and (11) cumulative error.   Each

category contains a flurry of subclaims, which the Court outlines as follows:

        A.      Ineffective Assistance of Counsel:

        1.      Trial counsel failed to obtain exculpatory evidence from John Cahill (a resident of house where the crime occurred) that could have been used to impeach Cahill's trial testimony and refute the prosecution's felony murder theory.  Claim No. 1.[6]

        2.      Trial counsel failed to object to or obtain a limiting instruction for Marie Zemek's testimony that petitioner allegedly threatened to harm her baby.  Claim No. 3.

        3.      Defense counsel Mike Danko and John Hicks violated the attorney-client privilege by disclosing to the prosecutor statements petitioner made regarding the whereabouts of his accomplice.  Claim No. 11.

        4.      An assortment of other claims, including that defense counsel Danko disclosed the location of petitioner's accomplice, defense counsel David Roberson delayed the issuance of defense witness subpoenas, defense counsel John Hicks disclosed attorney-client confidences regarding petitioner's desire to be represented by counsel, and defense counsel Tony Savage's refusal to play certain witness tapes at trial.  Claim No. 16.

        5.      Trial counsel Savage made statements in his closing regarding the victim's status as a confidential informant and why someone would be at scene of the crime that, according to the petitioner, demonstrated to the jury that Mr. Savage believed petitioner was guilty.  Claim No. 20.

        6.      Trial counsel declined to show Kristine Zemek's deposition to the jury.  Claim No. 21.

        7.      Trial counsel erroneously failed to object to the first aggressor instruction.  Claim No. 27.

        B.      Right to Self-Representation:  The trial court refused to allow petitioner to proceed *pro se*, despite repeated requests, defense counsel's failure to prepare, and a looming trial date.  Claim Nos. 13, 22.

        C.      Right to Present a Defense:

        1.      The trial court erroneously denied petitioner's request to admit unedited versions of deposition tapes of defense witnesses Trina Baldwin and Kristine

---

    [6]  Unless otherwise noted, all further citations to petitioner's habeas claims refer to Dkt. No. 8, but will contain reference to only the pertinent claim number(s) ("Claim No.") as found in that entry.  The lowercase use of the word "claim" refers to earlier, state court versions of what later became petitioner's federal habeas claims.

REPORT AND RECOMMENDATION
PAGE - 7

Zemek, which would have had impeachment value.  Claim No. 15.

    2.    The trial court erroneously excluded evidence the victim's status as a confidential informant and his prior bad acts, which would have helped to explain petitioner's state of mind in relation to his self defense argument.  Claim Nos. 12, 25.

D.    <u>Right to Exclude Prejudicial Evidence</u>:

    1.    Trial court erroneously admitted testimony from Marie Zemek that petitioner had threatened to kill her baby. Claim Nos. 2, 24.[7]

E.    <u>Prosecutorial Misconduct</u>:

    1.    The prosecutor erroneously led the jury to believe that petitioner knew Kristine Zemek had a protection order against him.  Claim No. 4.

    2.    The prosecutor erroneously left a photograph of the victim's gunshot wound on display during his two hour cross-examination of defense witness Dr. Robert Olsen, which inflamed the jury's passions.  Claim No. 5.

    3.    The prosecutor introduced a hearsay report from a Dr. James Butcher.  Claim No. 6.

    4.    The prosecutor improperly treated petitioner's self defense argument as an insanity defense when he cross examined Dr. Olsen, which allowed the admission of prior bad acts and led to the violation of several constitutional rights.  Claim Nos. 7, 8.

    5.    The prosecutor improperly used testimony from Dr. Olsen regarding petitioner's propensity to make threats.  Claim No. 9.

    6.    The prosecutor improperly elicited testimony from Dr. Olsen regarding petitioner's veracity when petitioner's character had not yet been made an issue.  Claim No. 10.

    7.    The prosecutor improperly intruded into petitioner's attorney-client relationship to discover the location of petitioner's accomplice.  Claim No. 18.

    8.    The prosecutor misstated the law of self defense to the jury. Claim No. 19, 28.

E.    <u>Speedy Trial</u>:  Petitioner's speed trial rights were violated by unspecified delays that gave tactical advantage to the prosecutor and prejudiced his case (e.g., at least one defense witness became unavailable).

---

[7] Petitioner also appears to allege that this somehow violated his right to remain silent and relieved the defense of its burden of proving guilt beyond a reasonable doubt. *See* Claim Nos. 2, 24.

REPORT AND RECOMMENDATION
PAGE - 8

Claim No. 14.

F.  <u>Jury Bias</u>.  The trial court erred by failing to hold a hearing to determine whether the jury had been impacted by a newspaper article reporting that petitioner had threatened his defense counsel.  Claim No. 17.

G.  <u>Deficient Jury Instruction</u>:  Jury instruction number fifteen misstated the law of accomplice liability by stating petitioner had to have knowledge of any crime, not the alleged burglary predicate.  Claim No. 23.

H.  <u>Insufficient Evidence to Convict</u>:  The prosecution failed to disprove petitioner's self defense claim.  Claim No. 26.

I.  <u>Unconstitutional State Collateral Review Rule</u>:  R.C.W. § 10.73.140, the State's bar on successive and/or frivolous petitions, is unconstitutional because it allows for "arbitrary and/or selective" dismissal without evaluating the merits of a PRP.  Claim No. 29.

J.  <u>Cumulative Error</u>:  All of the aforementioned claims render petitioner's trial proceedings fundamentally unfair.  Claim No. 30.

Respondents' answer argues that petitioner has (1) failed to exhaust seventeen of his thirty claims, each of which are procedurally barred by adequate and independent state grounds; (2) raised two claims which should be dismissed for failure to present a cognizable federal question, and (3) raised eleven exhausted claims that are without merit.  Dkt. No. 22. The Court proceeds to these arguments in turn.

## IV.  ANALYSIS

A.  <u>Petitioner Has Exhausted Twenty-Two of his Thirty Claims</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), governs petitions for habeas corpus filed by prisoners who were convicted in state courts.  28 U.S.C. § 2254.  In order for a federal district court to review the merits of a § 2254 petition, the petitioner must first exhaust his state court remedies.  28 U.S.C. § 2254(b)(1)(A); *Fields v. Waddington*, 401 F.3d 1018, 1020 (9th Cir. 2005).  The purpose of the exhaustion doctrine is to preserve federal-state comity which, in this setting, provides state courts an initial opportunity to correct violations of its prisoners' federal rights.  *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Ex parte Royall*, 117 U.S. 241, 251 (1886).  A petitioner can satisfy the exhaustion requirement by either (1) fairly and fully

REPORT AND RECOMMENDATION
PAGE - 9

01  presenting each of his federal claims to the highest state court from which a decision can be

02  rendered, or (2) demonstrating that no state remedies are available to him. *Johnson v. Zenon*,

03  88 F.3d 828, 829 (9th Cir. 1996).  A petitioner fairly and fully presents a claim if he submits it

04  "(1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper

05  factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir.

06  2005) (internal citations omitted).

07          The Ninth Circuit requires that a habeas petitioner explicitly identify the federal basis of

08  his claims either by identifying specific portions of the federal Constitution or statutes, or by

09  citing federal or state case law that analyzes the federal Constitution. *Insyxiengmay*, 403 F.3d

10  at 668; *Fields*, 401 F.3d at 1021.  Alluding to broad constitutional principles, without more,

11  does not satisfy the exhaustion requirement. *Id.*  Although *pro se* petitioners may be entitled

12  to more leniency than habeas petitioners with counsel, *Sanders v. Ryder*, 342 F.3d 991, 999

13  (9th Cir. 2003), such petitioners ordinarily do not satisfy the exhaustion requirement if the

14  state court must read beyond their motion in order to ascertain their claims. *Baldwin v. Reese*,

15  541 U.S. 27, 32 (2004).[8]

16          In this case, the exhaustion analysis is complicated by the large number of direct and

17  collateral state court attacks, the number of claims raised in each, and the verbose nature of

18  petitioner's prose.  Because of these factors, it is difficult to tell precisely which claims have

19  been properly exhausted.  Nevertheless, after careful analysis of the record and after resolving

20  all doubts in petitioner's favor, it appears that twenty-two of his thirty claims are properly

21  exhausted, comprising eight of the eleven general categories outlined above.

22

23          [8] Washington Rule of Appellate Procedure 13.7(b) limits the issues to be reviewed by the
    Washington Supreme Court to those "raised in . . . the petition for review and the answer." *State*

24  *v. Collins*, 121 Wn.2d 168, 847 P.2d 919, 924 (1993).  For exhaustion purposes, then, a petition
    for review must contain "[a] concise statement of the issues presented for review."  R.A.P.

25  13.4(c)(5), (7); R.A.P. 10.3(a)(5). The Washington Supreme Court has additionally "required that
    the petition for review state the issues with specificity." *Collins*, 121 Wn.2d at 178, 847 P.2d at

26  924 (citing *Clam Shacks of Am. Inc. v. Skagit County*, 109 Wn.2d 91, 98 743 P.2d 265 (1987)).

REPORT AND RECOMMENDATION
PAGE - 10

01                    1.    Ineffective Assistance of Counsel

02          Petitioner's § 2254 petition alleges more than half a dozen instances of ineffective

03   assistance of counsel.  Dkt. No. 8.  However, the factual *and* legal basis for only three of these

04   claims was presented to the Washington Supreme Court:  (1) that trial counsel failed to obtain

05   and utilize evidence to impeach John Cahill's testimony; (3) that trial counsel failed to object or

06   obtain a limiting instruction for Marie Zemek's testimony that petitioner threatened to harm

07   her baby; and (27) trial counsel failed to object to jury instruction 25, which stated that an

08   initial aggressor is not entitled to self-defense.  Dkt. No. 24, Ex. 49 (claim 1); Ex. 50, (claim

09   2); Ex. 56 (claims 3-6).    The factual basis of petitioner's three remaining ineffective assistance

10   claims were never presented to the State courts and may not now be raised, as explained

11   below.  *See infra* § IV.B.

12                    2.    Right to Self-Representation

13          In two separate claims, petitioner alleges that the trial court denied him the opportunity

14   to proceed *pro se*.  Claim Nos. 13, 22.  These claims are sufficiently related to be considered as

15   a single claim.  They were properly exhausted in petitioner's petition for direct review to the

16   Washington Supreme Court.  Dkt. No. 24, Ex. 31 at 5.

17                    3.    Right to Present a Defense, Have Relevant Evidence Admitted

18          In three separate claims, petitioner alleges that his right to present an adequate defense

19   was violated.  Claim Nos. 12, 15, 25.  In two of the claims, petitioner alleges that evidence of

20   his victim's prior crimes and status as a confidential informant was erroneously excluded.

21   Claim Nos. 12, 25.  These claims are sufficiently related to be considered as a single claim and

22   were properly exhausted his petition for direct review to the Washington Supreme Court.  Dkt.

23   No. 24, Ex. 31 at 17-18.  The same cannot be said for Claim No. 15, relating to the trial

24   court's denial of petitioner's request to admit unedited versions of Trina Baldwin and Kristine

25   Zemek's deposition recordings at trial for impeachment purposes.  This claim appeared for the

26   first time in petitioner's 2254 petition, and is barred for the reasons discussed below.  *See infra*

REPORT AND RECOMMENDATION
PAGE - 11

01 | § IV.B.

02 | 4.    Right to Exclude Prejudicial Evidence

03 | Petitioner also alleges that the trial court erroneously admitted testimony from Marie

04 | Zemek regarding threats petitioner had allegedly made against her baby (Claim No. 2), as well

05 | as evidence that petitioner assaulted Kristine Zemek. Claim No. 24.  Petitioner exhausted the

06 | first claim in his July 7, 2005 motion for discretionary review regarding the dismissal of his

07 | third and fourth PRPs, as well as in the third PRP itself.  Dkt. No. 24, Ex. 31 at 56, Ex. 49.

08 | The second claim was properly exhausted by its filing in petitioner's October 31, 2003 motion

09 | for discretionary review.  *Id.* Ex. 31 at 15-16.

10 | 5.    Prosecutorial Misconduct

11 | Petitioner raises nearly a dozen arguments he characterizes as "prosecutorial

12 | misconduct."  Claim Nos. 4-11, 18-19, 28.  Petitioner raised all but one of these claims in his

13 | October 18, 2002 PRP, which was submitted to the Supreme Court but transferred to the

14 | Court of Appeals.  Dkt. No. 24, Ex. 37 (claims 1-7).[9]  Respondents argue that these claims are

15 | not properly exhausted because the PRP was transferred to the Court of Appeals for review

16 | and because petitioner's subsequent motion for discretionary review of the Court of Appeals'

17 | dismissal merely incorporated these arguments by reference—a practice that is generally

18 | insufficient for purposes of satisfying the exhaustion requirement.  *See Baldwin v. Reese*, 541

19 | U.S. 27, 30-32 (2004); *Kibler v. Walters*, 220 F.3d 1151, 1153-54 & n.1 (9th Cir. 2000).

20 | Although the Supreme Court transferred the PRP to the Court of Appeals, it

21 | nevertheless addressed the merits of the prosecutorial misconduct claims in the motion for

22 |

23 | [9] Petitioner's 7th and 8th claims allege that the prosecutor improperly treated petitioner's

24 | self defense argument as an insanity defense, which allowed the admission of damaging "prior

25 | acts" evidence.  These claims are substantially related and were exhausted in petitioner's October 18, 2002 PRP.  Dkt. No. 24, Ex. 37 (claims 4 and 5).  Similarly, petitioner's 19th and 28th claims allege that the prosecutor misstated the law of self defense to the jury.  Claim Nos. 19, 28.  These

26 | claims are substantially overlapping and were sufficiently exhausted petitioner's motion for discretionary review during his direct review proceedings.  *Id.* Ex. 31 at 21-22.

REPORT AND RECOMMENDATION
PAGE - 12

01  discretionary review.  Dkt. No. 24, Ex. 40; *see also id.* Ex. 43 at 2.  This is sufficient for

02  purposes of exhaustion.  *See Greene v. Lambert*, 288 F.3d 1081 (9th Cir. 2002) (noting that

03  district courts may address merits of a federal claim where state court addressed merits in

04  unusual procedural context).  Petitioner, however, failed to provide the Supreme Court with

05  the factual basis for his claim that the prosecutor improperly penetrated petitioner's attorney-

06  client relationship to discover the whereabouts of his accomplice.  Claim No. 18.  Hence, this

07  particular prosecutorial misconduct claim may not now be raised, for the reasons discussed

08  below.  *See infra* § IV.B.

09          6.  <u>Speedy Trial</u>

10        Petitioner also argues that his right to a speedy trial was violated and tactical

11  advantages lost when unspecified trial delays occurred.  Claim No. 14.  These disadvantages

12  include the resulting unavailability of potential defense witness Gerald Whitehorn and

13  availability of State witness Dorsha Riggs, and the State's "securing of a compelled psychiatric

14  examination [of petitioner] that was misused or abused by the State at Petitioner's trial."  *Id.*

15        Although passing "speedy trial" references were made in his November 9, 2004, motion

16  for discretionary review of his first PRP, petitioner failed to present the factual basis of this

17  claim to the Washington Supreme Court.  Dkt. No. 24, Ex. 42; *see also Johnson*, 88 F.3d at

18  829 (noting that exhaustion requires petitioner to fairly and fully present his federal claim "to

19  the highest state court with jurisdiction to consider it").  As a result, this claim is unexhausted

20  and, regardless, cannot now be considered for the multiple reasons discussed below.  *See infra*

21  § IV.B.

22          7.  <u>Jury Bias</u>

23        Petitioner's 2254 petition argues that the trial court erroneously failed to hold a hearing

24  to determine whether the jury had been affected by a newspaper article reporting that petitioner

25  had physically threatened one of his defense counsel.  Claim No. 17.  There is no evidence of

26  this claim in any of petitioner's pleadings to the Washington Supreme Court.  It is unexhausted

01 and will not be considered. *See infra* § IV.B.

02         8.    <u>Deficient Jury Instruction</u>

03       Petitioner argues that jury instruction fifteen misstated the law of accomplice liability by

04 allowing the jury to convict petitioner if he knowingly aided in the commission of "a" crime

05 instead of "the" charged crime. Claim No. 23. He argues that this distinction relieved the

06 State of its burden of proof. *Id.* This claim was properly exhausted in petitioner's petition for

07 discretionary review of his direct appeal and in his most recent PRP. Dkt. No. 24, Ex. No. 31

08 at 10; *id.* Ex. 61 (claim 1).

09         9.    <u>Insufficient Evidence to Convict</u>

10       Petitioner argues that the prosecution failed to disprove his self defense claim, thereby

11 failing to adequately prove the *mens rea* of the alleged crime. Claim No. 26. This argument

12 was properly exhausted in petitioner's petition for discretionary review of his direct appeal.

13 Dkt. No. 24, Ex. 31 at 12-15.

14        10.    <u>Unconstitutional State Collateral Review Process</u>

15       Petitioner argues that R.C.W. § 10.73.140, the State's rule against successive and/or

16 frivolous petitions, unconstitutionally allows selective application and permits courts to avoid

17 merit-based determinations. Claim No. 29. This claim was exhausted in petitioner's motion to

18 modify the Supreme Court's denial of his January 21, 2005 PRP. Dkt. No. 24, Ex. 58; Ex. 42

19 (claim 12).

20        11.    <u>Cumulative Error</u>

21       Petitioner also argues that the cumulative effect of his thirty claims for relief render his

22 conviction fundamentally unfair. Claim No. 30. Petitioner has raised this argument repeatedly

23 since his earliest collateral attacks. *See* Dkt. No. 24, Ex. 37 (claim 8); Ex. 41 (claim 21); Ex.

24 49 (claim 3); Ex. 56 (claims 7, 12). It is properly exhausted.

25       In sum, petitioner properly exhausted twenty-two of his claims, and failed to exhaust

26 eight. His unexhausted claims fall under the categories of ineffective assistance of counsel,

REPORT AND RECOMMENDATION
PAGE - 14

01  right to present a defense, prosecutorial misconduct, speedy trial, and jury bias.  As the Court

02  explains below, many of these claims are very similar to exhausted claims falling under the

03  same category.

04        B.     <u>Petitioner's Eight Unexhausted Claims Are Procedurally Barred</u>

05            1.     <u>Express and Implied Procedural Bar Rules Apply, Making a</u>

06                   <u>Return to State Court to Futile</u>

07       Ordinarily, federal district courts must offer habeas petitioners who present mixed

08  petitions with the choice of (1) returning to state court to exhaust their claims, or (2)

09  amending and resubmitting their petitions to include only exhausted claims.  *Rose v. Lundy*,

10  455 U.S. 509, 510 (1982); *Kelly v. Small*, 315 F.3d 1063, 1069-70 (9th Cir. 2003).

11  Thereafter, a petitioner may ask the district court to stay her federal habeas petition pending

12  exhaustion of state remedies on the unexhausted claims.  *James v. Pliler*, 269 F.3d 1124,

13  1126 (9th Cir. 2001).  If the court grants the stay and holds the petition in abeyance pending

14  the exhaustion of state remedies, the petitioner may then return to federal court without

15  encountering problems with AEDPA's statute of limitations or prohibition on second or

16  successive petitions.

17       However, these choices are only relevant when a petitioner has a meaningful chance

18  to present the claims to a state court.  When unexhausted claims are procedurally barred, "the

19  district court dismisses the petition because the petitioner has no further recourse in state

20  court." *Franklin v. Johnson*, 290 F.3d 1223, 1231 (9th Cir. 2002).  In such an case,

21  "unexhausted" claims effectively become exhausted, as a return to state court to assert these

22  claims "would be futile."  *Phillips v. Woodford*, 267 F.3d 966, 974 (9th Cir. 2001); *see also*

23  *Engle v. Isaac*, 456 U.S. 107, 125-26 n.28 (1982) (noting that the exhaustion requirement

24  applies "only to remedies still available at the time of the federal petition"); *Harris v. Reed*,

25  489 U.S. 255, 268 (1989) (O'Connor, J., concurring) ("[I]n determining whether a remedy

26  for a particular constitutional claim is 'available,' the federal courts are authorized, indeed

01  required, to assess the likelihood that a state court will accord the habeas petitioner a hearing

02  on the merits of his claim.").

03      A petitioner is deemed to have "procedurally defaulted" his claim if he failed to

04  comply with a state procedural rule, or failed to raise the claim at the state level at all.

05  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).   Procedural defaults in state court may

06  result in a procedural bar in federal habeas actions.   Moreover, the United States Supreme

07  Court has recognized that when a petitioner has defaulted on his claims in state court,

08  principles of federalism, comity, and the orderly administration of justice require that federal

09  courts forego the exercise of their habeas corpus power, unless the petitioner can demonstrate

10  (1) cause for the default and prejudice attributable thereto, or (2) that failure to consider the

11  claim will result in a "fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255,

12  261-62 (1989); *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991); *see also Franklin v.

13  Johnson*, 290 F.3d 1223, 1230-31 (9th Cir. 2002).   The resulting bar can be express or

14  implied.   A state court invokes an express procedural bar by explicitly referring to a state rule

15  or procedure to deny a petitioner's claim, or by referring to a case or phrase that invokes the

16  applicable rule.   *See, e.g.*, *Zichko v. Idaho*, 247 F.3d 1015, 1021 (9th Cir. 2001) (rule); *Park

17  v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000) (case); *Bennett v. Mueller*, 322 F.3d 573,

18  580 (9th Cir.) (phrase), *cert. denied sub nom. Blanks v. Bennett*, 540 U.S. 938 (2003).   An

19  implied procedural bar exists when a petitioner has failed to fairly present his claims to the

20  highest state court and would now be barred from returning to do so by an adequate,

21  independent, and mandatory state procedural rule.   *Moreno v. Gonzalez*, 116 F.3d 409, 411

22  (9th Cir. 1997).   Both doctrines are subcategories of the "independent and adequate state

23  ground" doctrine, which "applies to bar federal habeas when a state court declined to address

24  a prisoner's federal claims because the prisoner had failed to meet a state procedural

25  requirement." *Coleman*, 501 U.S. at 729-30.

26      In the present case, the Washington Supreme Court and Court of Appeals expressly

REPORT AND RECOMMENDATION
PAGE - 16

01  found, on more than one occasion, that R.C.W. § 10.73.140 barred many of petitioner's

02  myriad claims relating to ineffective assistance of counsel, deficient jury instructions,

03  prosecutorial misconduct, right to present a defense, right to a speedy trial, right to exclude

04  prejudicial evidence and other vague due process claims made in some or all of his PRPs and

05  motions for discretionary review.  *See* Dkt. 24, Exs. 36, 40, 55, 57, 64, *and In re Bolar*, Case

06  No. 78476-1.  This provision requires the Court of Appeals to dismiss a PRP if it raises either

07  similar issues as those raised in a previous petition, or new claims, unless the petitioner shows

08  good cause for not raising the new arguments in an earlier PRP.  *See* R.C.W. § 10.73.140

09  (barring successive PRPs if petitioner has "filed a previous petition on similar grounds"); *see*

10  *also* R.A.P. 16.4(d) ("No more than one [personal restraint] petition for similar relief on

11  behalf of the same petitioner will be entertained without good cause shown.").

12          Not only did the Washington Supreme Court and Court of Appeals expressly conclude

13  that petitioner was procedurally barred from raising several of his claims pursuant to R.C.W.

14  § 10.73.140, this Court finds that certain claims, to the extent they are titularly "unexhausted"

15  and were *not* addressed by the above-cited state court rulings, are also subject to an implied

16  procedural bar, for they would now be prohibited by an independent, adequate, and

17  mandatory rule of state procedure, R.C.W. § 10.73.140, making a return to state court futile.

18  *Phillips v. Woodford*, 267 F.3d 966, 973-74 (9th Cir. 2001).[10]  Put differently, "the complete

19  procedural bar [rule] means these claims have been exhausted for habeas purposes, even

20  though they were never fairly presented to the state courts."  *Valerio v. Crawford*, 306 F.3d

21  742, 770 (9th Cir. 2002); *see also Coleman*, 501 U.S. at 735 n.1.[11]  Resolution of this matter,

22

23          [10] To this end, the Court summarily rejects petitioner's argument that R.C.W. § 10.73.140

24  is not an adequate, independent, and mandatory state procedural rule.  *See Kibler v. Walters*, 220
    F.3d 1151, 1153-54 (9th Cir. 2000) (rejecting identical argument).

25          [11] Furthermore, it is likely that petitioner could not return to state court to seek additional

26  relief for any of his claims for an independent reason.  Under Washington state law, collateral
    attacks must be filed within one year after the judgment becomes final.  R.C.W. § 10.73.090(1).
    The mandate for the direct appeal of his conviction issued on June 23.  Dkt. No. 24, Ex. 33; *see*

REPORT AND RECOMMENDATION

PAGE - 17

01 then, turns on whether petitioner has shown that cause and prejudice exist, or a fundamental

02 miscarriage of justice will result if his unexhausted claims are not considered. *Harris*, 489

03 U.S. at 261-62.

04 The Court finds that neither exception applies.

2. <u>Petitioner Has Not Shown That Cause and Prejudice Exists, or</u>
<u>That A Fundamental Miscarriage of Justice Will Result If His</u>
<u>Unexhausted Claims Are Not Considered</u>

07 Federal courts generally honor state procedural bars unless it would result in a

08 "fundamental miscarriage of justice," or petitioner demonstrates cause and prejudice, absent

09 waiver by the respondents. *Coleman*, 501 U.S. at 750. "Cause" is a legitimate excuse for the

10 default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Id.*

11 To satisfy the "cause" prong of the cause and prejudice exception, a petitioner must

12 show that "some objective factor external to the defense" prevented him from complying with

13 the state's procedural rule. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991). Objective factors

14 establishing "cause" may include interference by government officials making compliance

15 with the procedural rule impracticable, as well as "a showing that the factual or legal basis"

16 for the claims "was not reasonably available" at the time of the default. *Id.* at 493-94

17 (internal quotations omitted). Constitutionally ineffective assistance of counsel may also

18 constitute cause, but any attorney error short of that—such as attorney ignorance,

19 inadvertence, or tactical decision—will not excuse the default. *Id.* at 494. Furthermore, the

20 mere fact that a petitioner is *pro se* or lacks knowledge of the law is insufficient to satisfy the

21 cause prong. *See, e.g.*, *Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905, 909 (9th Cir. 1986)

22 (*pro se* petitioner must be held accountable for failure to timely and adequately pursue his

23 remedy to the state supreme court).

24 Petitioner has failed to establish "cause" for his numerous procedural defaults or even

25

26 R.C.W. § 10.73.090(3). Accordingly, any further motion filed by petitioner in state court would
be time-barred, in addition to being repetitive. *Id.* § 10.73.040; R.A.P. 16.4(d).

REPORT AND RECOMMENDATION
PAGE - 18

point to a single external impediment preventing him from timely and adequately presenting some or all of his eight unexhausted claims to the Washington Supreme Court.  Indeed, the fact that petitioner was able to present and properly exhaust twenty-two substantially similar claims belies the existence of such an obstacle.   Furthermore, the fact that some of petitioner's unexhausted claims fall under the ineffective assistance of counsel category does not, without more, establish the requisite cause in this matter, for the substantive reasons stated below.  *See infra* § IV.D.1.   In sum, Petitioner simply makes no showing that some objective factor external to his defense prevented him from complying with R.C.W. § 10.73.040.  Because petitioner "cannot establish any reason, external to him, to excuse his procedural default," this Court need not address the issue of actual prejudice.  *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998); *see Thomas v. Lewis*, 945 F.2d 1119, 1123 n.10 (9th Cir. 1991) (finding of lack of cause eliminates courts need to discuss whether petitioner was prejudiced by the alleged constitutional violation).  Finally, because petitioner has not demonstrated the likelihood of his actual innocence, this case does not present the extraordinary instance where a habeas petition should be granted notwithstanding the absence of a showing of cause.  *Murray*, 477 U.S. at 495-96.

        The foregoing analysis allows the Court to proceed to the merits on at least twenty-two of petitioner's thirty claims, many of which are strikingly similar to his eight unexhausted claims which, as explained above, could not be remedied by a return to state court.  This approach will undoubtedly provide the finality petitioner has earnestly sought for over six years.  If the Court were to proceed otherwise, and allow the presence of petitioner's eight unexhausted claims to prevent analysis on the merits of his twenty-two exhausted claims, it would "be allowing a very small tail to wag a very large dog," to the severe detriment all parties involved.  *Valerio*, 306 F.3d at 770.

REPORT AND RECOMMENDATION
PAGE - 19

01          C.       Standard of Review

02          AEDPA "demands that state-court decisions be given the benefit of the doubt."

03  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  A habeas petition may be granted with respect

04  to any claim adjudicated on the merits in state court only if the state court's adjudication is

05  *contrary to*, or involved an *unreasonable application of*, clearly established federal law as

06  determined by the Supreme Court.  28 U.S.C. § 2254(d).

07          Under the "contrary to" clause, a federal habeas court may grant the writ only if the

08  state court arrives at a conclusion opposite to that reached by the Supreme Court on a

09  question of law, or if the state court decides a case differently than the Supreme Court has on

10  a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 389-90

11  (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the

12  writ only if the state court identifies the correct governing legal principle from the Supreme

13  Court's decisions but unreasonably applies that principle to the facts of the petitioner's case.

14  *Id.*  In addition, a habeas corpus petition may be granted if the state court decision was based

15  on an unreasonable determination of the facts in light of the evidence presented.  *See* 28

16  U.S.C. § 2254(d).

17          In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the Supreme Court examined the meaning

18  of the phrase "unreasonable application of law" and corrected an earlier interpretation by the

19  Ninth Circuit which had equated the term with the phrase "clear error."  The Court explained:

20              These two standards . . . are not the same. *The gloss of clear error fails
                to give proper deference to state courts by conflating error (even clear error)*
21              *with unreasonableness.  It is not enough that a federal habeas court, in its*
                *"independent review of the legal question" is left with a "firm conviction" that*
22              *the state court was "erroneous."* . . .  [A] federal habeas court may not issue
                the writ simply because that court concludes in its independent judgment that
23              the relevant state-court decision applied clearly established federal law
                erroneously or incorrectly.  Rather, that application must be objectively
24              unreasonable.

25  *Lockyer*, 538 U.S. at 68-69 (citations omitted, emphasis added).

26          Thus, the Supreme Court has directed lower federal courts reviewing habeas petitions

REPORT AND RECOMMENDATION
PAGE - 20

01  to be extremely deferential to state court decisions.  A state court's decision may be

02  overturned only if the application is "objectively unreasonable."  *Id.*  Whether a state court

03  adjudication was reasonable depends upon the specificity of the rule; "the more general the

04  rule, the more leeway courts have[.]"  *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

05       D.    The Washington Supreme Court's Decisions Rejecting Petitioner's
               Arguments and Upholding His Conviction Were Neither Contrary to Nor

06                 an Unreasonable Application of Clearly Established Supreme Court Law

07             1.    Ineffective Assistance of Counsel

08       Claims of ineffectiveness of counsel are reviewed according to the standard announced

09  in *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984).  In order to prevail on such a

10  claim, the petitioner must establish two elements.  First, he must establish that counsel's

11  performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness"

12  under "prevailing professional norms."  *Strickland*, 466 U.S. at 687-88.  Second, the petitioner

13  must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a

14  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

15  would have been different."  *Id.* at 694.

16       Considering the first prong of the *Strickland* test, the petitioner must rebut the "strong

17  presumption that counsel's conduct falls within the wide range of reasonable professional

18  assistance."  *Strickland*, 466 U.S. at 689.  The test is not whether another lawyer, with the

19  benefit of hindsight, would have acted differently, but rather, whether "counsel made errors so

20  serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

21  Amendment."  *Id.* at 687, 689; *see also Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000)

22  ("Under *Strickland*, counsel's representation must be only objectively reasonable, not flawless

23  or to the highest degree of skill.")

24       To meet the second *Strickland* requirement of prejudice, the petitioner must show that

25  counsel's deficient performance prejudiced the defense.  *Id.* at 687.  It is not enough that

26  counsel's errors had "some conceivable effect on the outcome."  *Id.*  at 693.  Rather, the

01  petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors,

02  the result of the proceeding would have been different." *Id.* at 691. "A reasonable probability

03  is a probability sufficient to undermine confidence in the outcome" of the case. *Id.* at 694.

04  Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other.

05  *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002).

a.  *Failure to Adequately Cross-Examine John Cahill*

07      Under the Sixth Amendment, petitioner has a federal constitutional right to conduct

08  cross-examination. *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). Nevertheless,

09  petitioner's first claim, that trial counsel failed to obtain and utilize evidence for further

10  impeachment of John Cahill's trial testimony, Dkt. No. 8 at 4-5, fails for multiple reasons.

11  First, the claim improperly conflates petitioner's trial results with his counsels' efforts. Trial

12  transcripts reflect that petitioner's trial counsel engaged in a lengthy cross-examination of

13  Cahill, which exposed several of the very inconsistencies the petitioner asserts were

14  inadequately pursued. For example, using a March 11, 1999 police statement, petitioner's

15  counsel exposed numerous inconsistencies between Cahill's trial testimony and prior

16  statements, including whether petitioner was escorted by Cahill into the room where he

17  attacked his victim or was blocked by Cahill and/or admonished not to enter, and whether

18  Cahill actually witnessed the attack by petitioner and his accomplice. Dkt. No. 27-6 at 34-36,

19  38, 40, 44-46, 59-60.

20      Second, petitioner's argument, at best, attacks a tactical decision by his trial counsel

21  that is accorded great deference on habeas review and cannot, as a general matter, form the

22  basis of an ineffective assistance of counsel claim. *Mancuso v. Olivarez*, 292 F.3d 939 (9th

23  Cir. 2002); *see also Dows*, 211 F.3d at 487 ("[C]ounsel's tactical decisions at trial, such as

24  refraining from cross-examining a particular witness or from asking a particular line of

25  questions, are given great deference."). To this end, the fact that petitioner's trial counsel

26  impeached Cahill using documents *different* from those which petitioner believes should have

REPORT AND RECOMMENDATION
PAGE - 22

01  been utilized is of no moment. *See Dows*, 211 F.3d at 487; *cf. Cannon v. Mullin*, 383 F.3d

02  1152, 1164 (10th Cir. 2004) ("It is not . . . always the best trial strategy to exploit every

03  inconsistency in the statements of a witness, even a witness called by opposing counsel."), *cert.*

04  *denied*, 544 U.S. 928 (2005).  Petitioner has simply not met the "heavy burden of proving that

05  counsel's assistance was neither reasonable nor the result of sound trial strategy." *Murtishaw*

06  *v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).

07      Because petitioner's trial counsels' performance regarding the cross-examination of

08  Cahill did not fall below an "objective standard of reasonableness" under "prevailing

09  professional norms," petitioner could not have been prejudiced by it. *Strickland*, 466 U.S. at

10  687-88.   Furthermore, even if it could be said that his counsel so erred, petitioner has failed to

11  show the required prejudice resulting therefrom.

12          b.   *Trial Counsel Failed to Object to or Obtain a Limiting*
                 *Instruction for Marie Zemek's Testimony that Petitioner*
13               *Threatened to Harm Her Baby*

14      Petitioner argues that his trial counsel rendered ineffective assistance by failing to

15  object to the trial court's admission of testimony that petitioner threatened to kill Marie

16  Zemek's baby several days before the murder.  Claim No. 3.  Additionally, petitioner argues

17  that counsels' failure to obtain a limiting instruction as to this testimony constitutes further

18  constitutionally deficient assistance. *Id.*  These arguments fail for at least two reasons.

19      First, the record reflects that petitioner's counsel *did* lodge several objections to the

20  admission of this testimony, both before trial and during it, as irrelevant, inflammatory, and

21  violative of ER 403 and 404(b). *See, e.g.*, Dkt. No. 24, Ex. 5 at 32-40 (May 18, 1999 pretrial

22  proceedings).  The superior court twice denied this request, choosing to admit the evidence,

23  "limited to that weekend," under the "MIMIC" exception of ER 404(b), finding it relevant to

24  prove motive and intent, as well as *res gestae*, and concluding that its relevance outweighed its

25  prejudicial effect. *See id.* Ex. 11 at 29.  Before trial began, petitioner's counsel once again

26  requested that the court bar all reference to defendant's alleged assault on Kristine Zemek,

01  Marie Zemek, and Dean Buchanan during the weekend preceding the homicide, arguing that

02  such evidence was "not relevant to the killing of Mr. Hill[,] excludable under Rule 403, and . . .

03  a violation of Rule 404(b)[,] and certainly . . . prejudicial." *Id.* Ex. 18 at 25-26 (March 13,

04  2000 pretrial proceedings); *see also id.* at 26 (counsel arguing that "I can see [the prosecution

05  playing to the jury that, well, [petitioner] assaulted these three other people, therefore, he

06  could not been apprehensive or afraid of Mr. Hill."). The court denied this motion, reiterating

07  its earlier opinion that such evidence was relevant to petitioner's motive and intent, and

08  constituted a "part and parcel of a continuum of events that ended tragically . . . for Mr. Hill"

09  and others. *Id.* In sum, the record is replete with evidence that counsel vigorously objected

10  to this evidence, and the Court of Appeals properly denied this claim for reasons similar to that

11  stated by the trial court. *See* Dkt. No. 24, Ex. 55, at 1-2.

12      Second, even assuming petitioner's counsel failed to object, a claim of ineffectiveness

13  based upon counsel's failure to object must demonstrate that the objection probably would

14  have produced a different result at trial—*i.e.*, establish the prejudice requirement of *Strickland*.

15  *See Strickland*, 466 U.S. at 690. Petitioner has failed to meet this burden. Given the

16  overwhelming weight of the evidence against petitioner, it is highly probable that the jury

17  would have returned an identical verdict absent these statements of prior violent conduct,

18  which in no way constituted the core of the State's case. *See Humphrey v. Waddington*, --- F.

19  Supp. 2d ---, 2006 WL 3312244, *3 (W.D. Wash. Nov. 9, 2006) ("Only in instances of failure

20  to object to egregious statements about testimony central to the prosecution's case will failure

21  to object establish that counsel's performance fell below an objective standard of

22  reasonableness according to prevailing professional norms.") (citing *Strickland*, 466 U.S. at

23  694). Moreover, as explained above, this Court must give defense counsel wide latitude in

24  making tactical decisions, such as when and how and how often to object. *Dows*, 211 F.3d at

25  487.

26

REPORT AND RECOMMENDATION
PAGE - 24

01       c. *Trial Counsel Failed to Object to the First Aggressor*
        *Instruction*

02

03    Petitioner's final exhausted argument in this category argues that his trial counsel were

04 ineffective when they failed to object to the trial court's instruction that explained that a self-

05 defense argument was not available to one who provoked or commenced a confrontation with

06 the victim.  Claim No. 27.  This "first aggressor" instruction stated as follows:

07     No person may, by any intentional act reasonably likely to provoke a belligerent
     response, create a necessity for acting in self-defense and thereupon kill another

08     person.  Therefore, if you find beyond a reasonable doubt that the defendant or
     an accomplice's acts and conduct provoked or commenced the fight, then self-

09     defense of another is not available as a defense.

10 Dkt. No. 24, Ex. 27B (Instruction No. 25).

11    Failure to object is not ineffective assistance of counsel when the objection would have

12 lacked merit, as it would have here.  *United States v. Aguon*, 851 F.2d 1158, 1172 (9th Cir.

13 1988) (en banc), *overruled on other grounds by Evans v. United States*, 504 U.S. 255 (1992).

14 The facts presented to the trial court were of petitioner unlawfully entering a residence where

15 he shot and killed Mr. Hill, who was romantically involved with petitioner's former girlfriend,

16 Kristine Zemek.  While the parties still dispute exactly how petitioner entered the room where

17 he shot Hill, neither party argues that it was *Hill* who came after petitioner; rather, petitioner's

18 self-defense argument peculiarly insists that his seeking out of Hill was itself a defensive act.

19 *See, e.g.*, Dkt. No. 24, Ex. 49 at 33-34.  Furthermore, an ineffective assistance of counsel

20 claim based on counsel's failure to object to a jury instruction requires a showing of prejudice.

21 *United States v. Swanson*, 943 F.2d 1070, 1073 (9th Cir.1991).  Petitioner cannot make this

22 showing.  Instruction twenty-five was not constitutionally improper, and petitioner has failed

23 to establish that an objection to it would have been merited, much less successful, or that it

24 would have in any way helped petitioner's cause.

25

26

REPORT AND RECOMMENDATION
PAGE - 25

01      In conclusion, petitioner's counsels' alleged missteps do not amount to errors of

02  constitutional magnitude.  Assuming *arguendo* that the opposite were true, the Court would

03  find that counsels' deficient performance did not prejudice petitioner's defense under the

04  circumstances.  *Strickland*, 466 U.S. at 691, 694.

05                2.    <u>Right to Self-Representation</u>

06      In Claims 13 and 22, petitioner argues that the trial court denied him the opportunity to

07  proceed *pro se* at trial by "failing to grant petitioner's repeated, consistent, and unequivocal

08  requests to represent himself" weeks before the commencement of trial.  Claim No. 22.

09      In *Faretta v. California*, 422 U.S. 806, 821 (1975), the United States Supreme Court

10  held that a defendant in a state criminal trial has a right to self-representation which stems from

11  the Sixth Amendment—the so-called "*Faretta* right."  This right, however, "occupies no

12  hallowed status similar to the right to counsel enshrined in the Sixth Amendment."  *Sandoval*

13  *v. Calderon*, 241 F.3d 765, 774 (9th Cir. 2000).  "A defendant may not invoke the *Faretta*

14  right if the *Faretta* demand is untimely, equivocal, made for the purpose of delay, or is not

15  knowingly and intelligently made."  *Id.* (citing *United States v. Schaff*, 948 F.2d 501, 503 (9th

16  Cir. 1991)); *see also United States v. Arlt*, 41 F.3d 516, 519 (9th Cir. 1994) (same).

17  Accordingly, a court that is not reasonably certain of a defendant's choice between exercising

18  his Sixth Amendment/*Gideon* right to counsel and his Sixth Amendment/*Faretta* right to

19  proceed *pro se* need not engage in a detailed colloquy with the defendant before appointing

20  counsel.  *Sandoval*, 241 F.3d at 774 ("[I]n light of the disfavored status the right to

21  self-representation enjoys vis-a-vis the right to counsel, there is no rule that a defendant who

22  has once expressed a desire for self-representation must be cautioned or addressed personally

23  before receiving the assistance of counsel.  The law is to the contrary.").

24      In the present case, while petitioner's initial *Faretta* demand was arguably timely, it

25  was anything but unequivocal.  On April 5, 1999, petitioner requested "to proceed *pro se* with

26  the assistance of counsel."  Dkt. No. 24, Ex. 9. at 12; Ex. 3, at 25.  After being carefully

01  advised of his right to choose represent himself *or* be afforded counsel, *id.* Ex. 9 at 7-12, the

02  trial court expressly found that petitioner's request was equivocal, and therefore retained the

03  appointed counsel, Ms. Kathy Lynn, at that time. *Id.* Ex. 9 at 13.  Two days later, petitioner

04  moved the court to reconsider it decision and allow him to proceed *pro se*, which it did. *Id.*

05  Ex. 9 at 18.  The following day, petitioner or the court (or both) slightly changed course on

06  this issue, and the court, after recognizing that initial counsel in this matter had a conflict of

07  interest, provided petitioner with private, conflict-free counsel (Mr. Mike Danko) at public

08  expense to simply advise petitioner of the pros and cons of proceeding without counsel. *Id.*

09  Ex. 9 at 34-35.  After this process, petitioner expressed that he wished to invoke his *Faretta*

10  right to proceed *pro se*. *Id.* Ex. 9 at 45.  However, shortly before the commencement of trial,

11  on May 25, 1999, petitioner again changed course and, after lengthy discussion with the trial

12  court, requested to be represented by counsel.  At this point, David Roberson was appointed

13  and the commencement of trial was continued to October 20, 1999, to allow Mr. Roberson

14  additional time to adequately prepare. *Id.* Ex. 12-13; *see also* Ex. 15 at 27; Ex. 3, at 25-26.[12]

15      This act was followed by petitioner's September 13, 1999 puzzling oral motion to

16  remove Mr. Roberson as counsel and substitute new counsel *or* allow petitioner to proceed

17  *pro se*. *See id.* Ex. 15 at 33-34.  The trial court denied both options of this conditional

18  request, explaining that "[t]here [would] not . . . be a further delay of this trial, Mr. Bolar, no

---

[12]  Specifically, the trial court addressed petitioner's request for counsel as follows:

> Now, I want to be real clear with you on this.  If you do this, Mr. Bolar, you're not going to sort of blow in and out, move in and out of representing yourself.  If you make this decision, which I believe is in your best interests . . . then Mr. Roberson is going to be your counsel of record, and that's the way we're going to go through [with] this . . . .

Dkt. No. 24, Ex. 3 at 20 (quoting Report of Proceedings, 5/25/99, at 42-43).

REPORT AND RECOMMENDATION
PAGE - 27

01  matter what." *Id.* at 34.[13]

02      Petitioner's vacillating conduct regarding his trial representation confirmed the superior

03  court's worst fears. *See infra*, n.12.  The Court of Appeals properly found that petitioner's

04  "requests were . . . inconsistent, sometimes changing from one day to another," Dkt. No. 24,

05  Ex. 3 at 26, and petitioner has presented this Court with no evidence that the opposite was

06  true. *Cf. Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982) (holding that *Faretta* right

07  "may be waived through defendant's subsequent conduct indicating he is vacillating on the

08  issue or has abandoned his request altogether").  Petitioner's *Faretta* rights were not violated

09  because he did not clearly and unequivocally declare to the trial court judge that he wanted to

10  represent himself. *Sandoval*, 241 F.3d at 774; *see also Adams v. Carroll*, 875 F.2d 1441,

11  1444-45 (9th Cir. 1989) (concluding that although requests to proceed *pro se* were

12  conditional, they were not unequivocal).  Moreover, petitioner's attempts during trial to

13  remove and/or substitute his counsel were untimely, inconsistent and, in conjunction with

14  threats of physical violence toward counsel, were undertaken primarily for purposes of

15  disruption and delay. *See, e.g.*, Dkt. No. 24, Ex. 16 at 11-14.  In sum, the Washington

16  appellate courts did not violate clearly established federal law in upholding the trial court's

17  refusal to remove counsel.

18          3.    <u>Right to Present a Defense, Have Relevant Evidence Admitted</u>

19      Petitioner alleges that his right to present an adequate defense was violated when

20  evidence of his victim's prior crimes and status as a confidential informant was erroneously

21  excluded by the trial court.  Claim Nos. 12, 25.

22      Defendants have a constitutional right to present a defense. *Chambers v. Mississippi*,

23  _____

24      [13]  Because the fact that petitioner was ultimately represented by two different attorneys
    during the majority of his trial (Messrs. John Hicks and Anthony Savage) is immaterial to the

25  question of whether petitioner clearly and unequivocally requested to represent himself at trial, the
    Court eschews an exhaustive analysis of how those lawyers joined petitioner's defense team.  In

26  other words, petitioner's requests were far from unequivocal prior to the time Hicks and Savage
    assumed primary representation of petitioner.

REPORT AND RECOMMENDATION
PAGE - 28

01  410 U.S. 284, 301 (1973).  However, this right is not absolute, and its mere invocation during

02  a § 2254 proceeding does not guarantee habeas relief.  *Accord Carriger v. Lewis*, 971 F.2d

03  329, 333 (9th Cir. 1992).  Rather, "the state court's decision to exclude certain evidence must

04  be so prejudicial as to jeopardize the defendant's [federal] due process rights."  *Tinsley v.*

05  *Borg*, 895 F.2d 520, 530 (9th Cir. 1990), *cert. denied*, 498 U.S. 1091 (1991).  Generally, a

06  trial court's exclusion of defense evidence does not implicate any constitutional considerations

07  because the Constitution gives trial judges "wide latitude" to exclude evidence.  *Delaware v.*

08  *Van Arsdall*, 475 U.S. 673, 679 (1986); *see also Jammal v. Van de Kamp*, 926 F.2d 918, 919

09  (9th Cir. 1991) ("We are not a state supreme court of errors; we do not review questions of

10  state evidence law.  On federal habeas we may only consider whether the petitioner's

11  conviction violated constitutional norms.").  Furthermore, state law evidentiary questions

12  ordinarily do not raise federal questions.  *Johnson v. Sublett*, 63 F.3d 926, 931 (9th Cir. 1995).

13          What the Constitution prohibits is the exclusion of critical, trustworthy defense

14  evidence, particularly where the evidence is central to the defendant's case and directly refutes

15  the State's allegations.  *See, e.g.*, *Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986).

16  Petitioner's requested evidence fails to carry this significance, and his argument fails rebut the

17  strong presumption in favor of the trial court's evidentiary rulings.  At worst, this evidence was

18  hearsay and irrelevant; its exclusion failed to prejudice petitioner's defense in any appreciable

19  way.  Accordingly, the Washington Supreme Court's denial of petitioner's evidentiary

20  challenges in this regard was not contrary to or an unreasonable application of clearly

21  established federal law.[14]

22

23

24
_____

25          [14]  The Court notes that this analysis would also apply to Petitioner's Claim No. 15,
    relating to the trial court's exclusion of unedited versions of Trina Baldwin and Kristine Zemek's
26  deposition recordings at trial for impeachment purposes, assuming this claim had been properly
    exhausted.

REPORT AND RECOMMENDATION
PAGE - 29

01          4.    Right to Exclude Prejudicial Evidence

02          Petitioner also alleges that the trial court erroneously admitted testimony from Marie

03    Zemek regarding threats petitioner had allegedly made against her baby, Claim No. 2, as well

04    as evidence that petitioner had previously assaulted Kristine Zemek. Claim No. 24.

05          This claim, like the previous claim, focuses on the state trial court's application of

06    Washington evidentiary rules, which does not raise a federal question.  Furthermore, petitioner

07    has failed to show that the trial court's admission of this testimony, assuming it was error, "so

08    fatally infected the proceedings it rendered his trial . . . 'fundamentally unfair as to amount to a

09    denial of [petitioner's] constitutional right to due process.'"  *Karis v. Calderon*, 283 F.3d

10    1117, 1129 n.5 (9th Cir. 2002) (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th

11    Cir. 1986)).   For many of the same reasons stated above, *see supra* § IV.D.3., the Court

12    rejects petitioner's argument and finds that the Washington appellate courts' decisions denying

13    the same were not contrary to or an unreasonable application of federal law as determined by

14    the Supreme Court.

15          5.    Deficient Jury Instruction

16          Petitioner argues that jury instruction fifteen misstated the law of accomplice liability

17    because it required only that petitioner knowingly aided in the commission of "a" crime,

18    instead of "the" crime—i.e., the charged crime.  Claim No. 23.  He further argues that this

19    distinction relieved the State of its burden of proof.  *Id.*

20          Generally, federal habeas relief does not lie for errors of state law.  *Souch v. Schaivo*,

21    289 F.3d 616, 623 (9th Cir.) (internal quotation omitted), *cert. denied*, 537 U.S. 859 (2002).

22    This includes allegations of defective state court jury instructions, unless "'the ailing instruction

23    by itself so infected the entire trial that the resulting conviction violates due process.'"  *Estelle*

24    *v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

25    "It is not sufficient that the instruction is erroneous; rather the petitioner must establish that

26    there was a reasonable likelihood that the jury applied the instruction in a way that violated a

REPORT AND RECOMMENDATION
PAGE - 30

01 constitutional right." *Carriger*, 971 F.2d at 334.

02      In light of the legal landscape in this area, petitioner's jury instruction argument is

03 without merit.  Not only did instruction fifteen speak, interchangeably, of both "a" crime *and*

04 "the" crime, thus taking much of the wind out of this argument's sail, but the Washington

05 Supreme Court properly found that the instruction was superfluous for the simple reason that

06 *both* petitioner and his cohort were acting as principals in committing the predicate burglary

07 felony,[15] and any alleged error harmless in light of the overwhelming evidence that petitioner

08 not only directly participated in the predicate felony, but was indisputably the killer.  *In re*

09 *Bolar*, Case No. 78476-1 at 1 (citing *State v. Bolar*, 118 Wn.App. 490, 506, 78 P.3d 1012

10 (2003); *State v. Carter*, 154 Wn.2d 71, 78-79, 109 P.3d 823 (2005)).   Instruction fifteen did

11 not relieve the State of its burden of establishing guilt beyond a reasonable doubt.  In sum,

12 petitioner's argument fails to meet the high standard required for the type of defect alleged.

13                     6.   <u>Insufficient Evidence to Convict</u>

14      Petitioner argues that the prosecution failed to disprove his self defense claim, thereby

15 failing to adequately prove the *mens rea* of the alleged crime.  Claim 26.  Petitioner's self-

16 defense theory is premised on the argument that, because of Mr. Hill's threats, prior criminal

17 history, and official protection as a police informant, petitioner needed to seek out and kill Mr.

18 Hill before Hill killed him.  *Id.*; *see also, e.g.*, Dkt. No. 24, Ex. 24 at 80-85.

19      In considering sufficiency-of-the-evidence claims, a habeas court must ask whether,

20 "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of

21 fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Hayes*

22 *v. Woodford*, 301 F.3d 1054, 1084 (9th Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307,

23 319 (1979)).   To this end, the Ninth Circuit has explained that "[t]he relevant inquiry is not

24

25          [15]   To this end, Washington's felony murder statute, R.C.W. § 9A.32.050(1)(b),
"expressly establishes the nonkiller participant's complicity in the homicide as a principal." *State*
26 *v. Rice* 102 Wn.2d 120, 125, 683 P.2d 199 (1984); *State v. Carter*, 154 Wn.2d 71, 78, 109 P.3d
823, (2005) (same).

REPORT AND RECOMMENDATION
PAGE - 31

01    whether the evidence excludes every hypothesis except guilt, but whether the jury could

02    reasonably arrive at its verdict." *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991).

03    Respondents are correct that review is sharply limited in this area, and that the Court is limited

04    to "record evidence," *United States v. Montgomery*, 150 F.3d 983, 1001 (9th Cir. 1998),

05    which must be viewed "as a whole in the light most favorable to the prosecution." *Gordon v.*

06    *Duran*, 895 F.2d 610, 612 (9th Cir. 1990).

07         Here, the jury was presented with ample evidence that petitioner sought out and killed

08    Mr. Hill in retaliation and extreme jealousy. *See, e.g.*, Dkt. No. 24, Ex. 21 at 4; Ex. 24 at 112;

09    *see also id.* Ex. 21 at 28-32 (testimony from Zemek regarding her 911 call, placed out of her

10    and the victim's fear of petitioner on the night of the killing).   Indeed, by his own theory of

11    self-defense, petitioner went looking for Hill and attacked him in the first instance.  Additional

12    evidence was presented that upon killing Mr. Hill, petitioner, using an elaborate disguise, fled

13    the scene of the homicide, eluding law enforcement for a considerable time. *See id.* Ex. 23 at

14    106-12.  The jury also heard testimony regarding *Mr. Hill's* prior threats, propensity for

15    violence, and criminal history. *See, e.g.*, *id.* Ex. 21 at 21-25; Ex. 3 at 15-18.  Nonetheless, its

16    unanimous verdict apparently found that the evidence against petitioner outweighed that

17    bearing on Mr. Hill's demeanor, threats, and violent history, and obviously concluded that

18    petitioner's actions were not indicative of one who believed he acted in self-defense.  Viewing

19    the evidence in the light most favorable to the prosecution, as this Court is required to do,

20    there is no question that a rational factfinder "could have found the essential elements of the

21    crime beyond a reasonable doubt." *Woodford*, 301 F.3d at 1084 (internal quotation omitted).

22    Accordingly, the state appellate court's adjudication of petitioner's post-conviction claim in

23    this regard was neither contrary to nor an unreasonable application of clearly established

24    federal law.[16]

25    _____

26         [16]  Even assuming, for the sake of argument, that petitioner had presented overwhelming
       evidence that the killing was an act of self-defense, such a defense would likely have been

REPORT AND RECOMMENDATION
PAGE - 32

01          7.      Unconstitutional State Collateral Review Process

02          Petitioner argues that R.C.W. § 10.73.140, the State's rule against successive and/or

03   frivolous petitions, unconstitutionally allows selective application and permits courts to avoid

04   determinations on the merits of a given petitioner's case. Claim No. 29. This argument makes

05   vague references to the Fifth, Sixth, and Fourteenth Amendments, as well as to general due-

06   process notions of "fundamental fairness." *Id.*

07          A federal court may not issue a writ of habeas corpus on the basis of a perceived error

08   of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Petitioner's claim fails to set forth,

09   even remotely, how R.C.W. § 10.73.140 violates the federal constitution and/or a fundamental

10   right established be federal law. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)

11   ("Conclusory allegations which are not supported by a statement of specific facts do not

12   warrant habeas relief."). To the extent petitioner is merely attempting to bootstrap his

13   § 10.73.140 claim into a supposed constitutional violation, federal habeas relief will not lie.

14   *Turner v. Calderon*, 281 F.3d 851, 867 (9th Cir. 2002).

15          8.      Prosecutorial Misconduct

16          As noted above, petitioner raises seven arguments he characterizes as "prosecutorial

17   misconduct." Claim Nos. 4-10, 19, 28. They include the argument that the prosecutor (1)

18   misstated the law of self defense to the jury during closing arguments (Claim Nos. 19, 28); (2)

19   erroneously led the jury to believe that petitioner knew, before the killing, Kristine Zemek had

20   a protection order against him (Claim No. 4); (3) erroneously left several photographs of the

21   victim's gunshot wound on the courtroom's easel during his two hour cross-examination of

22

23   _____

     unavailable under Washington law, rendering petitioner's insufficiency-of-the-evidence argument
24   irrelevant. *See State v. Dennison*, 115 Wn.2d 609, 616, 801 P.2d 19 (1990) (holding that,
     "[b]ecause Washington's felony murder statute clearly holds felons strictly responsible for any
25   deaths occurring [during the commission of a burglary, defendant's] proposed self-defense
     instruction was properly refused"). For that reason, the state appellate court's ruling that the State
26   did not bear the burden of disproving self-defense with respect to the felony murder charge was
     not error, let alone constitutional error. *See* Dkt. No. 24, Ex. 3 at 17.

REPORT AND RECOMMENDATION
PAGE - 33

01  defense witness Dr. Robert Olsen, which inflamed the jury's passions (Claim No. 5); (4)

02  improperly treated petitioner's self defense argument as an insanity defense when cross-

03  examining Dr. Olsen, which allowed the admission of prior bad acts (Claim Nos. 7, 8); (5)

04  improperly used testimony from Dr. Olsen regarding petitioner's propensity to make threats

05  (Claim No. 9); (6) improperly elicited testimony from Dr. Olsen regarding petitioner's veracity

06  when petitioner's character had not yet been put in issue (Claim No. 10); and (7) introduced a

07  hearsay report from a Dr. James Butcher (Claim No. 6).

08          The Court of Appeals methodically reviewed many of these claims, for which it found

09  there to be no actionable prosecutorial misconduct and, in the alternative, held that petitioner

10  failed to establish that the prosecutor's conduct prejudiced his defense regarding the felony

11  murder charge.  Dkt. No. 24, Ex. 3 at 30-33.  The Washington Supreme Court summarily

12  concurred, finding petitioner's arguments to be "totally devoid of merit."  Dkt. No. 24, Ex. 40.

13          Federal habeas review of prosecutorial misconduct is limited to the narrow issue of

14  whether the alleged conduct violated due process.  *See Thompson v. Borg*, 74 F.3d 1571, 1576

15  (9th Cir.), *cert. denied*, 519 U.S. 889 (1996).  Prosecutorial misconduct violates due process

16  when it has a substantial and injurious effect on or influence in determining the jury's verdict.

17  *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

18          After a careful review of the state court record, this Court finds no prosecutorial error

19  or misconduct of a constitutional dimension sufficient to grant the petition for writ of habeas

20  corpus.  The prosecutor's closing arguments not only did not misstate Washington law

21  regarding self defense, but such arguments, even if error, did not so infect the trial with

22  unfairness as to make petitioner's resulting conviction a denial of due process.  *Fields v.*

23  *Woodford*, 309 F.3d 1095, 1109 (9th Cir. 2002).  The same conclusion must be made with

24  respect to the prosecutor's protective order comment and other allegedly "improper" usages of

25  witness testimony or trial exhibits, for it is permissible for a prosecutor to argue inferences

26  based on evidence introduced at trial.  *See, e.g.*, *Duckett v. Godinez*, 67 F.3d 734, 742 (9th

REPORT AND RECOMMENDATION
PAGE - 34

01 Cir. 1995); *see also Thompson*, 74 F.3d at 1576 ("Improper argument does not, per se, violate

02 a defendant's constitutional rights.") (internal quotation omitted).   Furthermore, the trial court

03 instructed the jury that it was to follow the instructions of the court, not those of counsel, and

04 that counsel's comments were argument, not evidence.  *See* Dkt. 24, Ex. 27B (Instruction No.

05 1).  This Court has no reason to believe that the jury in this case was incapable of obeying

06 these straightforward instructions.  Assuming the opposite were true, the petitioner has failed

07 to establish that the prosecutor's impropriety had a substantial and injurious effect upon the

08 jury's verdict, therefore making any assumed error non-constitutional.  *Ortiz-Sandoval*, 81

09 F.3d at 899; *Thompson*, 74 F.3d at 1577.  Accordingly, federal habeas relief on the basis of this

10 claim is unwarranted.

11                 9.   <u>Cumulative Error</u>

12       Petitioner finally argues that, viewed cumulatively, his thirty claims for relief render his

13 conviction fundamentally unfair.

14       The cumulative error doctrine in habeas jurisprudence recognizes that, "even if no

15 single error were prejudicial, where there are several substantial errors, 'their cumulative effect

16 may nevertheless be so prejudicial as to require reversal.'"  *Killian v. Poole*, 282 F.3d 1204,

17 1211 (9th Cir. 2002) (quoting *United States v. de Cruz*, 82 F.3d 856, 868 (9th Cir. 1996)).

18 Where, as here, there is an absence of a specific constitutional violation, habeas review of a

19 cumulative trial court error is limited to whether the error "so infected the trial with unfairness

20 as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416

21 U.S. 637, 643 (1974).

22       Here, petitioner's numerous inadequate claims do not create a cognizable constitutional

23 claim in the aggregate.  Because this Court cannot grant a writ on the basis of errors whose

24 combined effect does not violate the Federal Constitution, petitioner's cumulative error claim

25 does not save his petition.  *Parle v. Runnels*, 387 F.3d 1030, 1045 (9th Cir. 2004).

26

REPORT AND RECOMMENDATION
PAGE - 35

V.   CONCLUSION

For the foregoing reasons, the Court recommends that petitioner's § 2254 petition for writ of habeas corpus be DENIED and this case DISMISSED with prejudice.  A proposed order accompanies this Report and Recommendation.

DATED this 18th day of January, 2007.


_James P. Donohue_
_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 36